IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LENELL T. ABBOTT, | § | |
| | § | |
| Defendant Below, | § | No. 373, 2025 |
| Appellant, | § | |
| | § | Court Below: Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2305002463A (K) |
| | § | |
| Appellee. | § | |

Submitted: July 8, 2026
Decided: July 21, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.

Anthony J. Capone, Esquire, OFFICE OF THE PUBLIC DEFENDER, Wilmington, Delaware, *for Defendant Below/Appellant.*

Matthew C. Bloom, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, *for Appellee.*

**SEITZ**, Chief Justice:

Under the Delaware criminal code, a "person prohibited" cannot possess "a deadly weapon or ammunition." At issue in this appeal is whether the State can secure separate convictions and impose separate sentences against a person prohibited for each deadly weapon possessed. Stated another way, does the statutory language "a deadly weapon" mean *one* deadly weapon, or does it mean *any* deadly weapon, which can be read as more than one deadly weapon? We hold that "a" deadly weapon means "one" deadly weapon and affirm the defendant's separate convictions and sentences for each firearm and ammunition.

I.

Section 1448 of the Delaware Criminal Code provides that "[a]ny person who has been convicted for the unlawful use, possession or sale of a . . . narcotic drug or controlled substance . . . . who knowingly possesses, purchases, owns or controls a deadly weapon or ammunition for a firearm . . . shall be guilty of possession of a deadly weapon or ammunition for a firearm by a person prohibited."[1] In 2001, Lenell Abbott pleaded guilty in Virginia to the charge of possession with intent to distribute cocaine.[2] In 2008, the Delaware Court of Common Pleas convicted Abbott

---

[1] 11 *Del. C.* § 1448(a)(3) & (b).

[2] App. to Opening Br. at A020, A199 [hereinafter A_ ].

of possession with intent to deliver a non-narcotic schedule I controlled substance.[3]

Thus, Abbott is a "person prohibited" from knowingly possessing, purchasing, owning, or controlling a deadly weapon or ammunition for a firearm.

In 2023, the police went to Abbott's residence in Dover, Delaware.[4] Abbott told them that he had a firearm hidden inside an air-conditioning vent.[5] The police also found ammunition for the weapon.[6] The police took Abbott to the station and interviewed him, before returning to the residence again with Abbott. On the return visit, Abbott told the police of a second firearm hidden in a different air-conditioning vent.[7] The police also found ammunition corresponding to that firearm.[8]

A Superior Court grand jury indicted Abbott on two counts of possession of a firearm by a person prohibited (PFBPP) and one count of possession of ammunition by a person prohibited (PABPP).[9] Abbott waived his right to a jury trial. After a bench trial, the Superior Court convicted Abbott on all three counts. On the first

---

[3] A016, A198–99.

[4] A092–93.

[5] A094.

[6] *Id.*

[7] A104–05, A149–51.

[8] *Id.*

[9] A020–23. Abbott was also charged with drug offenses, which were severed from the gun charges. A019. Following Abbott's PFBPP and PABPP convictions, the State dropped the drug charges. A008.

PFBPP count, the court sentenced Abbott to fifteen years at Level V incarceration, suspended after five years for two years at Level III probation. On the second PFBPP count, the court imposed fifteen years at Level V, suspended after three years for two years at Level II. Finally, on the PABPP count, the court sentenced Abbott to eight years at Level V, suspended for one year at Level III.[10]

On appeal, Abbott argues that his convictions are multiplicitous and therefore violate the Double Jeopardy Clause of the U.S. Constitution. He claims that the Superior Court should have merged the separate convictions into a single count for sentencing.[11] Because Abbott did not make this argument in the Superior Court, we review for plain error.[12] But "plain error review in a multiplicity challenge not contesting the facts is effectively *de novo*."[13]

## II.

To challenge his convictions, Abbott invokes the multiplicity doctrine. As we explained in *Sisson v. State*:

> The "multiplicity doctrine" is a subset of the protections afforded under the Double Jeopardy Clause. The Double Jeopardy Clause, as a constitutional principle, protects a defendant (1) against successive prosecutions; (2) against multiple charges under separate statutes; and

---

[10] A252–54.

[11] Opening Br. 3.

[12] *Patrick v. State*, 261 A.3d 1282, 1287 (Del. 2021).

[13] *White v. State*, 243 A.3d 381, 397 (Del. 2020).

(3) against being charged multiple times under the same statute. Multiplicity is the "charging of a single offense in more than one count of an indictment." Dividing "a single offense into multiple counts of an indictment violates the double jeopardy provisions" of both the Delaware and the United States Constitutions.[14]

Here, the State charged Abbott with the same statutory offense in two counts of the indictment. Thus, the question boils down to what is the "unit of prosecution" under the statute. Did the General Assembly intend to allow separate counts for each deadly weapon, or a single count for all deadly weapons?

The relevant statute, Section 1448, is unambiguous and therefore "conclusive of the legislature's intent."[15] Any person prohibited who possesses "a deadly weapon" commits a criminal offense. Unlike "any," which can precede singular or plural objects, the word "a" unambiguously sets the unit of prosecution for each offense as one deadly weapon.[16] This distinction has been recognized in "a consistent pattern" of judicial decisions across the country:

> [C]ourts that have reviewed the term "*any* firearm" . . . have found the allowable unit of prosecution *ambiguous* and have permitted only one conviction for simultaneous possession of multiple firearms. But in

---

[14] 903 A.2d 288, 309 (Del. 2006) (quoting *Feddiman v. State*, 558 A.2d 278, 288 (Del. 1989)).

[15] *Grand Ventures, Inc. v. Whaley*, 632 A.2d 63, 68 (Del. 1993).

[16] *Compare A*, Merriam-Webster Dictionary ("function word before singular nouns"); *with Any*, Merriam-Webster Dictionary ("one or some indiscriminately of whatever kind").

states with statutes that use the term "*a* firearm," courts have found multiple convictions are allowed.[17]

To hold otherwise would ignore the plain meaning of "a deadly weapon," and put us out of step with other courts interpreting the same words.

Abbott concedes that the statute's plain language is against him, but offers three reasons why "the distinction between single and multiple weapons is both less significant and less clear than it may seem."[18] He argues that (i) this Court's precedent has left the issue unsettled; (ii) legislative history shows that the General Assembly did not intend multiple convictions; and (iii) another statute vitiates the otherwise apparent difference between "a" and "any." As explained below, however, none of these arguments allow us to ignore Section 1448's plain language.

## A.

Abbott claims that "this Court has yet to fully analyze the merger of multiple firearms convictions under § 1448," and that the issue "is ripe for further examination."[19] We disagree. In *Buchanan v. State*, we denied a petition for post-

---

[17] *McGlasten v. State*, 328 So. 3d 101, 104 (Miss. 2021) (internal citations omitted) (emphasis in original) (citing *Taylor v. State*, 929 N.E.2d 912, 922 (Ind. Ct. App. 2010) (allowing multiple convictions where statute specified "a" firearm or deadly weapon); *State v. Kidd*, 562 N.W.2d 764, 766 (Iowa 1997) (same); *State v. Lindsey*, 583 So. 2d 1200, 1204 (La. Ct. App. 1991) (same); *State v. Stratton*, A.2d 986, 989 (N.H. 1989) (same)); *see also United States v. Freisinger,* 937 F.2d 383, 390 (8th Cir. 1991) (same); *United States v. Alverson,* 666 F.2d 341, 347 (9th Cir. 1982) (same); *State v. Nichols,* 865 S.W.2d 435, 437 (Mo. App. 1993) (same).

[18] Opening Br. 12 ("Although § 1448 refers to 'a deadly weapon' and 'a firearm' . . . .").

[19] *Id.* at 3, 10.

conviction relief based on defense counsel's alleged failure to argue that "three counts of possession of a deadly weapon by a person prohibited should have been merged into a single offense . . . ."[20]  Buchanan had been "found in possession of two different handguns as well as ammunition for one of the guns."[21]  We explained that "[m]erger was not appropriate" because "[e]ach handgun and the ammunition constituted a different offense."[22]  Thus, "counsel committed no error in failing to challenge the indictment on these grounds."[23]  In other words, *Buchanan* expressly held that the correct unit of prosecution for a PFBPP charge is each illegally held firearm.

Abbott argues that *Buchanan* is of little precedential value because our subsequent decision in *Brown v. State* called into question its holding.[24]  In *Brown*, we held that PFBPP and PABPP convictions do not merge, because each requires proof of a fact that the other does not.[25]  But we left open "the question ostensibly answered, but without analysis or the citation of authority, in *Buchanan v. State*:

---

[20] 26 A.3d 213, 2011 WL 3452148, at *4 (Del. Aug. 8, 2011) (TABLE).

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] 255 A.3d 951, 2021 WL 2588923 (Del. June 24, 2021) (TABLE).

[25] Possession of a firearm versus possession of ammunition.  *Id.* at *1.

7

whether 11 *Del. C.* § 1448 contemplates separate PFBPP counts—and separate sentencing upon conviction—for the simultaneous possession of multiple firearms."[26]

Three months later, however, in *Patrick v. State*, we again addressed merger under Section 1448. There, a defendant incurred two PFBPP convictions, not because he possessed two firearms, but because he was a person prohibited on separate grounds. On appeal, he argued that his convictions violated the multiplicity doctrine, as "the relevant unit of prosecution is the unlawful act of possession of a firearm or ammunition by a person prohibited, and not each way a person qualifies as a prohibited person."[27] We agreed, holding that "the unit of prosecution is the act of possession of a deadly weapon by a person prohibited and not the way in which a defendant qualifies as a person prohibited."[28]

Importantly, in *Patrick* we observed that this holding was "supported by our decision in *Buchanan v. State*."[29] We reasoned that *Buchanan*'s holding – that "a charge for each act of possession under the statute was proper" – also suggested that "the relevant unit of prosecution is each act of possession and not [one's] status as a

---

[26] *Id.* (footnote omitted).

[27] *Patrick*, 261 A.3d at 1288.

[28] *Id.* at 1289.

[29] *Id.* at 1290.

8

person prohibited."[30] We further explained that *Brown* "agreed with this approach" because it affirmed "convictions on two counts of possession of a deadly weapon or ammunition by a person prohibited based on [the] possession of a single firearm and ammunition for that firearm."[31]

In *Buchanan*, this Court held that the correct unit of prosecution for a PFBPP charge is each illegally held firearm. It controls the outcome of this appeal.

B.

Abbott also argues that Section 1448's legislative history renders the statute ambiguous. Abbott points out that, until 1992, Section 1448 referred to "*any* deadly weapon."[32] That year, HB 558 amended Section 1448 to refer to "a deadly weapon" instead of "any deadly weapon."[33] Abbott claims that this change "may have been entirely inadvertent" because the bill's synopsis stated that it "track[ed] favorably with Federal Law" and its stated purpose was unrelated to the issue raised here.[34]

---

[30] *Id.*

[31] *Id.* at 1290–91.

[32] Opening Br. 13 (emphasis added).

[33] Ex. A to Opening Br. (Del. H.B. 558, 136th Gen. Assem. (1992) ("An Act to Amend Chapter 5, Title 11 of the Delaware Code Providing Certain Punishments Upon Conviction for the Crime of Possession of a Deadly Weapon by a Person Prohibited and Relating to the Definition Thereof.") [hereinafter H.B. 558].

[34] Opening Br. 14–15 (quoting H.B. 558).

The federal law in question, 18 U.S.C. § 922, bars persons prohibited from possessing "*any* firearm or ammunition . . . ."[35]  For that reason, the U.S. Courts of Appeals have found Section 922's unit of prosecution ambiguous.[36]  Resolving the ambiguity in defendants' favor, those courts have held that a defendant can be only charged "with one violation" no matter "the actual quantity of firearms involved."[37]  Abbott claims that because HB 558's synopsis says that Section 1448, as amended, tracks Section 922, we must find the two statutes coextensive.

Here, however, "as with other sources of the legislative history, the Court may only look to the synopsis if the Court finds that the statutory language is ambiguous and requires interpretation."[38]  Because Section 1448 is unambiguous, we do not consult HB 558's synopsis in search of an ambiguity.

---

[35] 18 U.S.C. § 922(g) (emphasis added).

[36] *See State v. Fourth Jud. Dist. Ct.*, 481 P.3d 848, 852 (Nev. 2021) (collecting cases).

[37] *Id.* (quoting *United States v. Buchmeier,* 255 F.3d 415, 422 (7th Cir. 2001)).  The parties dispute whether the rule requiring those courts to resolve ambiguities for defendants – the rule of lenity – applies to the Delaware Criminal Code.  Because Section 1448 is unambiguous, we do not reach the issue.

[38] *Bd. of Adjustment of Sussex Cnty. v. Verleysen*, 36 A.3d 326, 332 (Del. 2012); *see also, e.g.*, *De Los Santos v. Allstate Prop. & Cas. Ins. Co.*, 345 A.3d 959, 2025 WL 2092402, at *4 (Del. July 25, 2025) (TABLE) (acknowledging a proposed statutory interpretation might "implement[] the General Assembly's intent to 'prevent coverage gaps' and 'reduce the number of uninsured drivers'" but disregarding it because "in the absence of ambiguity, the statute's text 'must be regarded as conclusive of legislature's intent'" (citations omitted)).

## C.

Finally, Abbott argues that Section 1448 is ambiguous because the General Assembly intended for singular and plural words to be read interchangeably. Abbott relies on Section 223 of the Delaware Criminal Code, which states:

> Unless the context otherwise requires, words denoting the singular number may, and where necessary shall, be construed as denoting the plural number, and words denoting the plural number may, and where necessary shall, be construed as denoting the singular number, and words denoting the masculine gender may, and where necessary shall, be construed as denoting the feminine gender or the neuter gender.[39]

For Section 223 to apply here, however, the context must allow "deadly weapon" to be substituted for "deadly weapons." It does not. The difference between "any" and "a" illustrates why. The word "any" before a plural word can be "used to indicate an[y] amount greater than zero" – one or multiple.[40] When preceded by the word "any," "deadly weapon" and "deadly weapons" can be used interchangeably. If Section 1448 referred to "any deadly weapons," Section 223 would apply. But Section 1448 refers to "a deadly weapon." The article "a" limits the statute to the singular, and the context does not permit replacing "deadly weapon" with "deadly weapons." "A deadly weapons" is grammatically incorrect. Because

---

[39] 11 *Del. C.* § 223.

[40] *Any – Simple Definition*, Merriam-Webster Dictionary (for example, "I can't find *any* stamps.").

the statutory context does not allow the singular and plural to be substituted in this statute, Section 223 does not apply.

Abbott claims that our decision in *Mills v. State* requires us to apply Section 223.[41] But Abbott misreads *Mills*, which did not address Section 223 or the issue at hand. In *Mills*, we held that a statute criminalizing the assault of law enforcement officers was ambiguous as to its unit of prosecution.[42] But that statute contained two possible units of prosecution – "an arrest" and "a peace officer" – to which "the 'a' versus 'any' logic could apply with equal force . . . ."[43] We observed that the distinction was not useful in choosing between the two. *Mills* does not help Abbott in this appeal.[44]

III.

The State properly charged Abbott with three counts of possession by a person prohibited: one count for each of the two firearms, and one count for the ammunition. Abbott could be sentenced separately for each count. Whether the result is unfair,

---

[41] 201 A.3d 1163 (Del. 2019).

[42] *Id.* at 1170–71.

[43] *Id.* at 1170.

[44] Abbott argues with little elaboration that the Court should revisit its holding in *Brown* that a firearm and ammunition charge do not merge. We decline to do so in this appeal. Abbott also argues for the first time in his reply brief that ammunition is a lesser-included offense under 11 *Del. C.* § 206 and therefore that conviction violates the Double Jeopardy Clause, and these circumstances lack sufficient separation of time, location, and purpose to maintain separate PFBPP convictions. Arguments not raised in the opening brief are waived. Supr. Ct. R. 14(b)(vi)(A)(3).

and whether the statute should be amended, is for the General Assembly and not the courts.  The judgment of the Superior Court is affirmed.